UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IROQUOIS MASTER FUND, LTD. and IROQUOIS CAPITAL INVESTMENT GRP. LLC,<br><br>Plaintiffs,<br><br>-against-<br><br>CREATD, INC.,<br><br>Defendant. | **C.A. No. 26-CV-9316**<br><br>**COMPLAINT** |

Plaintiffs Iroquois Master Fund, Ltd. and Iroquois Capital Investment Group LLC (collectively, "Iroquois" or "Plaintiffs"), by their attorneys, for their Complaint against Creatd, Inc. ("Creatd," the "Company," or "Defendant"), state as follows:

## Introduction

1. Plaintiffs, investors who have provided significant funding to Defendant, bring this action to obtain declaratory relief regarding their rights under preferred shares and warrants issued by Defendant. Plaintiffs also seek to recover damages arising from Defendant's failure to honor the registration rights agreements governing the shares of common stock underlying the securities that Defendant has sold to the Plaintiffs.

## The Parties

2. Plaintiff Iroquois Master Fund Ltd. (the "Master Fund") is a Cayman Islands exempted limited liability company with its principal place of business in the Cayman Islands. The Master Fund is a private investment fund managed by Iroquois Capital Management LLC. Since its founding in 2005, plaintiff Master Fund has invested in and provided capital to

hundreds of small businesses, that are either public companies or seeking to become publicly traded.

3. Plaintiff Iroquois Capital Investment Group LLC ("ICIG") is a Delaware limited liability company registered to do business in New York. It is an affiliate of IMF. None of its members are citizens of Delaware or Nevada.

4. Defendant Creatd is a Nevada corporation with its principal place of business in Dover, Delaware. Creatd's shares are traded on the OTCQB Marketplace under the ticker symbol "CRTD." Creatd is a holding company for a variety of businesses.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over Plaintiffs' claims in this action pursuant to 28 U.S.C. § 1332(a)(3) because this is an action in between citizens of different States and in which a citizen of a foreign state is an additional party. The amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the parties have designated this District as the stipulated venue for adjudication of their disputes.

7. The parties have agreed in their agreements to submit to the exclusive jurisdiction of courts sitting in the City of New York, Borough of Manhattan, for the adjudication of any dispute arising in connection with the Warrants, preferred shares, notes and related agreements.

## Plaintiffs' Investments in Creatd

8. Throughout 2025, plaintiffs made a series of investments in Defendant Creatd to sustain its business and to support its investments in new businesses. Through those investments, plaintiffs acquired warrants, notes and preferred shares.

9. Plaintiffs acquired their Series G Preferred stock through a series of investments in Creatd during 2025, made under a Securities Purchase Agreement dated February 4, 2025 (the

"SPA"). Plaintiffs' Series G positions were established principally through closings on February 14, 2025 and February 27, 2025, with a further Series G investment on September 8, 2025. The February 27, 2025 closing arose from Creatd's acquisition of Flewber/Flyte, in which Plaintiffs' August 2024 Flewber notes were exchanged into Series G Preferred stock at twice their principal amount. In the aggregate, through the three closings, Plaintiff Master Fund acquired 834 Series G Preferred shares, originally convertible into 625,500 shares of common, and ICIG acquired 500 shares, originally convertible into 375,000 shares of common stock.

10. The Certificate of Designation for the Series G Preferred provided for protection against dilution in Section 7(b):

> b) Subsequent Equity Sales. If, at any time while there are shares of Preferred Stock outstanding, the Company or any Subsidiary, as applicable, sells or grants any option to purchase or sells or grants any right to reprice, or otherwise disposes of or issues (or announces any sale, grant or any option to purchase or other disposition), any Common Stock or Common Stock Equivalents entitling any Person to acquire shares of Common Stock at an effective price per share that is lower than the then Conversion Price (such lower price, the "Base Conversion Price" and such issuances, collectively, a "Dilutive Issuance") (if the holder of the Common Stock or Common Stock Equivalents so issued shall at any time, whether by operation of purchase price adjustments, reset provisions, floating conversion, exercise or exchange prices or otherwise, or due to warrants, options or rights per share which are issued in connection with such issuance, be entitled to receive shares of Common Stock at an effective price per share that is lower than the Conversion Price, such issuance shall be deemed to have occurred for less than the Conversion Price on such date of the Dilutive Issuance), then simultaneously with the consummation (or, if earlier, the announcement) of each Dilutive Issuance *the Conversion Price shall be reduced to equal the Base Conversion Price* (subject to adjustment for reverse and forward stock splits, recapitalizations and similar transactions following the date of the Purchase Agreement). Notwithstanding the foregoing, no adjustment will be made under this Section 7(b) in respect of an Exempt Issuance…. The Company shall notify the Holder in writing, no later than the Trading Day following the issuance of any Common Stock or Common Stock Equivalents

> subject to this Section 7(b), indicating therein the applicable issuance price, or applicable reset price, exchange price, conversion price and other pricing terms (such notice, the "Dilutive Issuance Notice"). For purposes of clarification, whether or not the Company provides a Dilutive Issuance Notice pursuant to this Section 7(b), upon the occurrence of any Dilutive Issuance, the Holder is entitled to receive a number of Conversion Shares based upon the Base Conversion Price on or after the date of such Dilutive Issuance, regardless of whether the Holder accurately refers to the Base Conversion Price in the Notice of Conversion.

11. Under the SPA, Plaintiffs also acquired certain Series G warrants.

12. The February 14, 2025 Series G warrants permitted Plaintiffs to purchase Creatd common stock at $1.00 per share, subject to adjustment and with an "alternative cashless exercise" provision that permitted the issuance of additional shares (the "Original Warrants"). Plaintiff Master Fund acquired 50,200 Original Warrants and Plaintiff ICIG acquired 30,000 Original Warrants. Each Original Warrant contains protections against dilution that included both changes to exercise price and an increase in the number of shares so that the aggregate exercise dollar amount is the same. Section 3(d) of each Original Warrant provides:

> (d) <u>Subsequent Equity Sales</u>. If the Company or any Subsidiary thereof, as applicable, at any time while this Warrant is outstanding, shall sell, enter into an agreement to sell, or grant any option to purchase, or sell or grant any right to reprice, or otherwise dispose of or issue (or announce any offer, sale, grant or any option to purchase or other disposition) any Common Stock or Common Stock Equivalents, at an effective price per share less than the Exercise Price then in effect (such lower price, the "Base Share Price" and such issuances collectively, a "Dilutive Issuance") (it being understood and agreed that if the holder of the Common Stock or Common Stock Equivalents so issued shall at any time, whether by operation of purchase price adjustments, reset provisions, floating conversion, exercise or exchange prices or otherwise, or due to warrants, options or rights per share which are issued in connection with such issuance, be entitled to receive shares of Common Stock at an effective price per share that is less than the Exercise Price, such issuance shall be deemed to have occurred for less than the Exercise Price on such date of the Dilutive Issuance at such effective price), then simultaneously with the consummation (or, if earlier, the announcement) of each

Dilutive Issuance *the Exercise Price shall be reduced and only reduced to equal the Base Share Price and the number of Warrant Shares issuable hereunder shall be increased such that the aggregate Exercise Price payable hereunder, after taking into account the decrease in the Exercise Price, shall be equal to the aggregate Exercise Price prior to such adjustment*. Notwithstanding the foregoing, no adjustments shall be made, paid or issued under this Section 3(g) in respect of an Exempt Issuance. The Company shall notify the Holder, in writing, no later than the Trading Day following the issuance or deemed issuance of any Common Stock or Common Stock Equivalents subject to this Section 3(g), indicating therein the applicable issuance price, or applicable reset price, exchange price, conversion price and other pricing terms (such notice, the "Dilutive Issuance Notice"). For purposes of clarification, whether or not the Company provides a Dilutive Issuance Notice pursuant to this Section 3(g), upon the occurrence of any Dilutive Issuance, the Holder is entitled to receive a number of Warrant Shares based upon the Base Share Price regardless of whether the Holder accurately refers to the Base Share Price in the Notice of Exercise.

13. As of September 30, 2026, plaintiff Master Fund also held the following additional warrants issued by Creatd:

| **Issue Date** | **Original Amount** |
|---|---|
| 2/27/2025 Warrant | 500250 |
| 9/8/2025 Warrant | 75000 |
| 11/9/2025 Warrant | 35280 |
| 12/5/2025 Warrant | 26460 |

14. As of September 30, 2025, Plaintiff ICIG also held the following warrants issued by Creatd:

| **Issue Date** | **Original Amount** |
|---|---|
| 2/27/2025 Warrant | 300000 |
| 9/8/2025 Warrant | 45000 |
| 11/9/2025 Warrant | 21159 |
| 12/5/2025 Warrant | 15880 |

15. Each of the above warrants contained protections against dilution substantially identical to those in the Original Warrants. The above warrants, collectively with the Original Warrants, are referred to as the "Warrants."

<u>Breach of the Warrants and the Series G Preferred</u>

16. The Warrants and the Series G Preferred stock both adjusted as to exercise price and share amount in February 2026 when Defendant implemented a 1:20 reverse stock split. Defendant thereafter sold shares, which sales further adjusted the exercise price and share amount of the Warrants and the conversion price of the Series G Preferred.

17. Defendant has not provided written notice of these adjustments to plaintiffs since the reverse stock split.

18. Commencing in August 2026, Creatd undertook an effort to have its shares listed on NASDAQ in a transaction commonly referred to as an "uplisting." As part of its uplisting, Creatd engaged in transactions with holders of its notes, preferred shares and warrants to exchange those securities for shares of common stock.

19. On August 21, 2026, before the uplisting was consummated, Robby Tal, Creatd's Head of Operations, emailed Plaintiffs and proposed that Plaintiffs exchange all of their Creatd securities — their Notes, Series G Preferred, and Warrants — for common stock shares so that Creatd could "apply with a clean cap structure, all in common" for its NASDAQ uplisting.

20. In that email, Mr. Tal provided proposed Conversion and Exchange Agreements to implement the exchange. Mr. Tal indicated that in the exchange, each Warrant Share held by Plaintiffs would be exchanged for one share of common stock, even though those Warrants were far out of the money. The proposals assumed a $10.00 exercise or conversion price for the Warrants and the Series G Preferred.

21. Mr. Tal indicated that the deal proposed would provide Plaintiffs common stock with a value of "roughly $1.00 per share" in this exchange, even though it was likely worth far less. Mr. Tal indicated that other investors had agreed to the same terms and had signed the proposed agreement. Creatd's execution of an agreement for a common stock issuance at an

effective price of no more than $1.00 per share was a Dilutive Issuance under the Series G Preferred and the Warrants, which provide that the conversion price and exercise price adjust when "the Company … shall … enter into any agreement to sell … any Common Stock". The adjustment therefore did not depend on the consummation of the uplisting. In its Form 10-Q filed in September, 2026, Creatd disclosed that as of and through August 13, 2026:

> Subsequent to June 30, 2026, the Company entered into conversion and exchange agreements with nineteen holders of its price-protected preferred stock, price-protected warrants, and alternate cashless exercise warrants, pursuant to a voluntary exchange offered on substantially the same economic terms to all holders of such securities (the "Voluntary Exchange.")….
>
> Pursuant to these agreements, (i) holders converted an aggregate of 5,385 shares of Series G Preferred Stock, 887 shares of Series A Preferred Stock, 331 shares of Series H Preferred Stock, and 14,812 shares of Series I Preferred Stock into an aggregate of 614,890 shares of the Company's common stock; (ii) holders exchanged an aggregate of 442,258 price-protected warrants for 442,258 shares of common stock on a one-for-one basis; and (iii) holders exercised an aggregate of 83,033 alternate cashless exercise warrants at their stated multipliers for an aggregate of 284,582 shares of common stock.
>
> In addition, on July 14 and July 15, 2026, certain officers and employees of the Company converted an aggregate of 2,262 shares of Series H Preferred Stock into an aggregate of 44,009 shares of common stock pursuant to the conversion terms of the Series H certificate of designation, and exercised outstanding warrants containing alternate cashless exercise provisions, resulting in the cancellation of an aggregate of 114,060 warrants and the issuance of an aggregate of 456,240 shares of common stock; no cash proceeds were received by the Company in connection therewith. In total, subsequent to June 30, 2026, the Company issued or became obligated to issue an aggregate of 1,841,979 shares of common stock in connection with the foregoing conversions, exchanges, and exercises.

22. As a result of the above agreements, which have been consummated, the exercise price for the Warrants has been reduced to $1.00 (or less) with a corresponding increase in the Warrant shares. At an exercise price of no more than $1.00, the number of shares underlying the

Warrants has increased to no fewer than 1,210,390, without considering any additional shares that might be due based on the alternative cashless exercise formula in the Original Warrants. At an issuance based on a $1.00 valuation, the Series G Preferred has also adjusted to no fewer than 1,000,500 shares of common underlying the 1,334 shares of Preferred.

23. Plaintiffs have demanded that Creatd acknowledge the appropriate adjustments but Creatd has refused to do so, in breach of its obligations under the Warrants and the Certificate of Designation for the Series G Preferred shares.

Breach of the Registration Rights Agreements

24. In connection with the SPA, plaintiffs also entered into a Registration Rights Agreement dated as of January 22, 2025, for the Series G Preferred and the Series G Warrants (the "Series G RRA") under which Creatd agreed to register these securities with the SEC for resale in the public markets according to specific timelines.

25. Section 2(a) of the RRA provides:

> (a) *On or prior to each Filing Date*, the Company shall prepare and file with the Commission a Registration Statement covering the resale of all of the Registrable Securities that are not then registered on an effective Registration Statement for an offering to be made on a continuous basis pursuant to Rule 415…. Subject to the terms of this Agreement, the Company shall use its best efforts to cause a Registration Statement filed under this Agreement (including, without limitation, under Section 3(c)) to be declared effective under the Securities Act as promptly as possible after the filing thereto *but in any event no later than the applicable Effectiveness Date ...*

26. The Series G RRA defines "Filing Date" to mean, "with respect to the Initial Registration Statement required hereunder, the 90th calendar day following the date hereof…"

27. The Series G RRA defines "Effectiveness Date" to mean, "with respect to the Initial Registration Statement required to be filed hereunder, the 120th calendar day following the date hereof…"

28. In breach of the Series G RRA, Creatd never filed any registration statement for Plaintiffs' Series G Preferred, a breach which is ongoing.

29. Plaintiffs entered into registration rights agreements ("RRAs") that govern each of the Warrants. In breach of those RRA's, Creatd either never filed or did not timely file a registration statement that became effective for each of the Warrants.

30. In September 2026, in connection with its effort to uplist to NASDAQ, Creatd filed a registration statement with the Commission that registered for resale the shares of common stock it issued to other holders of its notes, preferred shares, and warrants who agreed to exchange those securities for common stock.

31. Creatd deliberately omitted Plaintiffs' Series G Preferred, the Warrants, and the Notes from that registration statement. The omission was not inadvertent. Creatd registered the securities of the holders who agreed to convert or exchange their securities as part of the uplisting, while intentionally excluding Plaintiffs, who declined to convert their Series G Preferred on the terms Creatd demanded.

32. Creatd thus withheld from Plaintiffs the registration to which they are contractually entitled in order to pressure Plaintiffs to convert, and it continues to refuse to register Plaintiffs' securities. Creatd's conduct is a deliberate and ongoing breach of the Series G RRA and the other RRAs, and confirms that its failure to register Plaintiffs' securities was willful rather than the product of any good-faith inability to perform.

33. All of the relevant RRAs provide for liquidated damages in the event of a breach of its obligation to file the registration statements. Under Section 2(d) of the Series G RRA, liquidated damages accrue monthly at a rate of 1.5% multiplied by the aggregate subscription amount, with 18% interest if the Company fails to pay any partial liquidated damages in full

within seven days after the date payable. if, as relevant, (i) the initial registration statement is not filed on or prior to the Filing Date, or (ii) if the Registration Statement is not declared effective by the Effectiveness Date of the Initial Registration Statement. The other RRAs have substantively identical liquidated damages provisions.

34. Each plaintiff also holds convertible notes dated November 10, 2025 and December 5, 2025 issued by Creatd, which are covered by the same RRAs, including their liquidated damages clauses. None of the shares underlying the Convertible Notes have been registered.

35. As a result of the foregoing breaches of the RRAs, plaintiffs are entitled to liquidated damages estimated to exceed $500,000 as of September 30, 2026, inclusive of contractual default interest at 18% per annum, and continuing to accrue.

## FIRST CAUSE OF ACTION (DECLARATORY JUDGMENT – SERIES G PREFERRED)

36. Plaintiffs repeat and re-alleges the allegations set forth in the foregoing paragraphs.

37. Under 28 U.S.C. § 2201, a declaratory judgment is appropriate where the facts alleged show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy to warrant declaratory relief.

38. Plaintiffs have fully performed their obligations under the SPA for the Series G Preferred. As set forth above, the conversion price of Series G Preferred has adjusted.

39. The Certificate of Designation for the Series G Preferred require Creatd to give written notice of adjustments pursuant to anti-dilution provisions to Plaintiffs.

40. Creatd has failed and refused to deliver written notices of adjustment as to the current conversion price of the Series G preferred stock.

41. Accordingly, there is a substantial controversy between the Plaintiffs and Creatd that is immediate, ongoing, and prospective in nature and that warrants declaratory relief.

42. To avoid future confusion and controversy, Plaintiffs seek a declaration as to the current conversion price of the Series G preferred stock, estimated to be no more than $1.00.

**SECOND CAUSE OF ACTION (DECLARATORY JUDGMENT – SERIES G WARRANTS)**

43. Plaintiffs repeat and re-alleges the allegations set forth in the foregoing paragraphs.

44. Under 28 U.S.C. § 2201, a declaratory judgment is appropriate where the facts alleged show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy to warrant declaratory relief.

45. Plaintiffs have fully performed their obligations under the SPA for the Series G Warrants. As set forth above, the exercise price of Series G Warrant has adjusted.

46. Plaintiffs never received from Creatd a written notice of adjustment as to the new exercise price of the Series G Warrants and the adjusted number of common shares underlying the warrants. Creatd has refused to issue written notice of the new cash exercise price despite Plaintiffs' request.

47. Creatd has failed and refused to deliver written notices of adjustment as to the current exercise price of the Series G Warrants.

48. Accordingly, there is a substantial controversy between the Plaintiffs and Creatd that is immediate, ongoing, and prospective in nature and that warrants declaratory relief.

49. To avoid future confusion and controversy, Plaintiffs seek a declaration as to the current exercise price of the Series G Warrant, estimated to be at no more than $1.00, with a commensurate adjustment to the number of shares under the Series G Warrants.

**THIRD CAUSE OF ACTION (DECLARATORY JUDGMENT – ALL WARRANTS)**

50. Plaintiffs repeat and re-alleges the allegations set forth in the foregoing paragraphs.

51. Under 28 U.S.C. § 2201, a declaratory judgment is appropriate where the facts alleged show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy to warrant declaratory relief.

52. Plaintiffs have fully performed their obligations under the Warrants set forth in paragraphs 12 and 13 above.

53. Each of the above Warrants require Creatd to give written notice of adjustments pursuant to anti-dilution covenants to Plaintiffs. As set forth above, the exercise price and share amount of these warrants had adjusted.

54. Plaintiffs never received from Created written notice of adjustment as to the new exercise price of the above warrants and the adjusted number of common shares underlying the above warrants. Creatd has, in breach of its obligations under the above warrants, refused to acknowledge the appropriate adjustments to the price and number of common shares.

55. To avoid future confusion and controversy, Plaintiffs seek a declaration as to the exercise price of each of the above warrants, and the number of common shares underlying these warrants.

**FOURTH CAUSE OF ACTION (LIQUIDATED DAMAGES)**

56. Plaintiffs repeat and re-alleges the allegations set forth in the foregoing paragraphs.

57. Each of the Warrants, the Series G Preferred, and the Notes held by the Plaintiffs have associated RRAs that require the filing of an initial registration statement within a certain

time and that Creatd use its best efforts to cause a registration statement to be declared effective, by a specified time.

58. Creatd has failed to file a registration statement for Plaintiffs' Series G securities.

59. Creatd has failed to timely file registration statements for the other Warrants held by Plaintiffs.

60. Creatd has failed to obtain an effective registration statement for any of the above securities.

61. Creatd has breached the relevant RRAs and owes liquidated damages to Plaintiffs in an amount to be determined at trial but currently estimated to exceed $500,000 as of September 30, 2026, and continuing to accrue.

**WHEREFORE**, Plaintiffs demand judgment against Creatd as follows:

a. That the Court enters judgment in each of Plaintiffs' favor in an amount to be determined at trial but which currently exceeds $500,000, together with continuing liquidated damages, contractual default interest at 18% per annum, and pre- and post-judgment interest;

b. That the court orders declaratory relief setting out the rights of the parties, including the relevant prices of the Series G Preferred and the Warrants and the adjusted number of shares underlying the Warrants; and

c. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 23, 2026

OLSHAN FROME WOLOSKY LLP

By: *_/s/ Thomas J. Fleming_*

Thomas J. Fleming
Jacqueline Y. Ma
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300
tfleming@olshanlaw.com

*Attorneys for Plaintiffs*